Filed 12/21/15  P. v. Curenio CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>CEFERINO ANASTACIO CURENIO,<br><br>　　　　Defendant and Appellant. | H041925<br>(Monterey County<br>Super. Ct. No. SS132594A) |

## I.　　INTRODUCTION

After his motion to suppress evidence was denied, defendant Ceferino Anastacio Curenio pleaded no contest to possession of ammunition by a felon (Pen. Code, § 30305, subd. (a)(1))[1] and admitted that he had a prior conviction that qualified as a strike (§ 1170.12, subd. (c)(1)) and that he had served a prior prison term (§ 667.5, subd. (b)). The trial court imposed a 32-month sentence for defendant's conviction of possession of ammunition and a one-year consecutive sentence for the prior prison term allegation, for an aggregate prison term of three years eight months.

On appeal, defendant contends the trial court erred by denying his motion to suppress.  We conclude the trial court did not err, and we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

## II.    BACKGROUND

On December 18, 2013, Monterey County Sheriff's Deputy Dustin Hedberg was on patrol. He stopped defendant's vehicle, determined that defendant was on parole, and conducted a search. The search revealed two unexpended 12-gauge shotgun shells in defendant's pants pocket. The search also revealed 56.7 grams of marijuana in the trunk of defendant's car.

Defendant was charged with possession of ammunition by a felon (§ 30305, subd. (a)(1); count 1) and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a); count 2). The information alleged that defendant had suffered a prior conviction that qualified as a strike (§ 1170.12, subd. (c)(1)) and that he had served a prior prison term (§ 667.5, subd. (b)). Defendant subsequently filed a motion to suppress evidence (§ 1538.5), arguing that there was no reasonable suspicion or probable cause for the vehicle stop.

At the hearing on defendant's motion to suppress, Deputy Hedberg testified that he stopped defendant's vehicle because the front passenger and driver's side windows were tinted, to such a degree that he could not see the inside of the vehicle or distinguish how many occupants there were. He could not even see the driver. Because Deputy Hedberg could not see inside the vehicle, he requested defendant roll down all the windows before he approached the vehicle. As he approached defendant's vehicle, he could smell marijuana. Defendant admitted that he was on parole, and Deputy Hedberg performed a parole search, which led to his discovery of the ammunition and marijuana.

Deputy Hedberg first observed defendant's vehicle at 9:21 p.m. He was sitting about 50 or 60 feet from the vehicle at the time. There was no natural lighting, but the artificial lighting from a nearby gas station was "pretty good." Deputy Hedberg was familiar with tinted safety glass as well as window tinting that is obtained by applying a film to the inside of the window. He believed the window tinting on defendant's vehicle was "after factory installation," because he had "never seen any factory tinting that dark."

2

Deputy Hedberg had been enforcing Vehicle Code violations for about nine years. He knew the Vehicle Code allowed window tinting as long as the light transmission was 70 percent or greater. He acknowledged he could not "just by eyeball," determine the specific light transmission measurement of a window.

In his moving papers and during arguments concerning the motion to suppress, defendant asserted that the vehicle stop was unlawful based on this court's opinion in *People v. Butler* (1988) 202 Cal.App.3d 602 (*Butler*). Defendant asserted that there can be no reasonable suspicion for a vehicle stop based on window tinting if the officer is unable to distinguish between unlawfully tinted windows and lawfully tinted safety glass, and that in this case Deputy Hedberg had not been able to make that distinction. The prosecutor argued that there was reasonable suspicion for the stop because the window tinting was so dark that Deputy Hedberg could not see inside the vehicle.

The trial court made the following findings in denying defendant's motion to suppress: "Officer Hedberg . . . testified that the vehicle that he stopped[,] he could not see the driver or whether or not there were any passengers. He said he was looking directly at the side of the vehicle and could not see in any of the windows. The only window that was not tinted was the front windshield going out. As a result, looking at it from the side, he could not see in it at all. That certainly also shows that the tinting was extreme. He indicated it was darker than factory. He also indicated that he had, I think it was, nine years of experience enforcing vehicle code violations. It was clear to him that the tinting was illegal."

## III.   DISCUSSION

Defendant contends the trial court erred by denying his motion to suppress. As he did below, defendant relies on this court's opinion in *Butler*, arguing that the vehicle stop was not supported by reasonable suspicion that the windows of defendant's vehicle were

unlawfully tinted because Deputy Hedberg did not "articulate any difference between a legal and illegal tinting."

### A. Standard of Review

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

### B. Analysis

An investigatory detention of an individual in a vehicle is permissible under the Fourth Amendment if supported by reasonable suspicion that the individual has violated the Vehicle Code. (See *People v. Saunders* (2006) 38 Cal.4th 1129, 1135.) The reasonable suspicion requirement is met "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

Some, but not all, window tinting is unlawful in California. Vehicle Code section 26708 prohibits a person from driving a vehicle "with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows" (*id*., subd. (a)(1)) and from driving a vehicle "with any object or material placed, displayed, installed, affixed, or applied in or upon the vehicle that obstructs or reduces the driver's clear view through the windshield or side windows" (*id*., subd. (a)(2)). However, under Vehicle Code section 26708, subdivision (d), "clear, colorless, and transparent material may be installed, affixed, or applied to the front side windows, located to the immediate left and right of the front seat if the following conditions are met: [¶] (1) The material has a minimum visible light transmittance of

4

88 percent.  [¶]  (2) The window glazing with the material applied meets all requirements of Federal Motor Vehicle Safety Standard No. 205 (49 C.F.R. 571.205), including the specified minimum light transmittance of 70 percent and the abrasion resistance of AS-14 glazing, as specified in that federal standard.  [¶]  (3) The material is designed and manufactured to enhance the ability of the existing window glass to block the sun's harmful ultraviolet A rays.  [¶]  (4) The driver has in his or her possession, or within the vehicle, a certificate signed by the installing company certifying that the windows with the material installed meet the requirements of this subdivision . . . , or, if the material was installed by the vehicle owner, a certificate signed by the material's manufacturer certifying that the windows with the material installed according to manufacturer's instructions meets the requirements of this subdivision . . . .  [¶]  (5) If the material described in this subdivision tears or bubbles, or is otherwise worn to prohibit clear vision, it shall be removed or replaced."

Vehicle Code section 26708.5 provides:  "(a) No person shall place, install, affix, or apply any transparent material upon the windshield, or side or rear windows, of any motor vehicle if the material alters the color or reduces the light transmittance of the windshield or side or rear windows, except as provided in subdivision (b), (c), or (d) of Section 26708.  [¶]  (b) Tinted safety glass may be installed in a vehicle if (1) the glass complies with motor vehicle safety standards of the United States Department of Transportation for safety glazing materials, and (2) the glass is installed in a location permitted by those standards for the particular type of glass used."

Since not all window tinting is unlawful, the mere fact that a vehicle has tinted windows will not justify a traffic stop.  A vehicle stop will, however, be justified if there are "additional articulable facts" suggesting that the tinted windows are in violation of the Vehicle Code.  (*Butler, supra,* 202 Cal.App.3d at p. 607.)  In *Butler,* an officer observed a Cadillac being driven in a suspicious manner outside a liquor store just prior to 2:00 a.m.  The officer thought the occupants of the vehicle might have been setting up a robbery.

5

He stopped the car because he believed the tinted windows were an " 'obvious Vehicle Code violation.' " (*Id.* at pp. 604-605.) This court found no facts in the record indicating that the officer had a "reasonable suspicion that the windows in the Cadillac were made of illegally tinted, rather than legally tinted, safety glass." (*Id.* at p. 606.) This court disagreed "with the People's suggestion that seeing someone lawfully driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified." (*Id.* at p. 607.)

In *People v. Niebauer* (1989) 214 Cal.App.3d 1278 (*Niebauer*), the defendant challenged the sufficiency of the evidence to support his conviction of driving with illegally tinted driver's side windows. (*Id.* at p. 1291.) An officer had stopped the defendant "because the windows were darker than normal and he could only see Niebauer's outline through the window." (*Id.* at p. 1292.) The officer had "admitted he had no training or expertise regarding light transmittance," but he had "stated that looking through the windows from where he stood outside the vehicle, his vision was obstructed." (*Id.* at pp. 1292-1293.) The court explained that in enacting Vehicle Code section 26708, the Legislature envisioned "a commonsense approach to [its] enforcement" and upheld the defendant's conviction based upon the officer's testimony. (*Niebauer, supra,* at p. 1292.) In dicta, the *Niebauer* court stated that a vehicle stop would have been justified on the facts of that case. (*Id.* at p. 1293, fn. 10.) The court explained that in contrast to *Butler,* the officer in *Niebauer* had not just testified that the vehicle had tinted windows. Rather, the officer had "testified to additional facts giving him reasonable suspicion Niebauer was driving with illegally tinted windows." (*Ibid.*)

In *People v. Hanes* (1997) 60 Cal.App.4th Supp. 6 (*Hanes*), an officer stopped the defendant's vehicle at night after seeing it pass through a lighted intersection at a speed of about 10 to 15 miles per hour. (*Id.* at p. 8.) The officer was "a three-year veteran who had stopped vehicles on suspicion of illegally tinted windows approximately four hundred times." (*Ibid.*) The officer saw that the right front window of the

6

defendant's vehicle was " 'so black that it kind of matched the color of the car' " and that he was unable to see the occupants of the vehicle. (*Ibid.*) The *Hanes* court found the detention reasonable. (*Id.* at p. 10; see also *People v. Roberts* (2010) 184 Cal.App.4th 1149, 1190-1191 (*Roberts*) [upholding vehicle stop based on officer's testimony that the window tinting was so dark that the officer could not see inside the vehicle].)

In the instant case, unlike in *Butler*, Deputy Hedberg did not stop defendant's vehicle based on the mere fact that the vehicle had tinted windows. Deputy Hedberg testified to "additional articulable facts" suggesting that the tinted windows were in violation of the Vehicle Code. (*Butler, supra,* 202 Cal.App.3d at p. 607.) Deputy Hedberg testified that he stopped defendant's vehicle because the front passenger and driver's side windows were tinted to such a degree that he could not see the inside of the vehicle or distinguish how many occupants there were. He could not even see the driver.

Deputy Hedberg made his observations from about 50 or 60 feet from the vehicle at the time, in a site with "pretty good" lighting. Deputy Hedberg had "never seen any factory tinting that dark." He had been enforcing Vehicle Code violations for about nine years, and he knew the Vehicle Code allowed window tinting as long as the light transmission was 70 percent or greater. This testimony was similar to the testimony in *Niebauer,* where the vehicle's windows were darker than normal and the officer's view of the vehicle's interior was obstructed; *Hanes,* where the vehicle's window tinting prevented the officer from seeing the occupants of the vehicle; and *Roberts*, where the window tinting was so dark that the officer could not see inside the vehicle.

Defendant asserts that the record here shows that Deputy Hedberg was "not familiar with a method of distinguishing legal tinting from illegal tinting." He relies on the following exchange:

"Q. And officer, as far as your training and experience, do you have any way to distinguish between film tint, that plastic sheeting that's applied to an automotive glass, and tinted safety glass or glass that has the tint buil[t] into it?

7

"A. Are you talking about like patio table tinted glass? That style tinted safety glass?

"Q. Just automotive. Automotive safety glass.

"A. I'm not familiar with that, so I couldn't say."

At best, this exchange indicates that Deputy Hedberg was not able to distinguish between film tint and tinted safety glass. This exchange does *not* indicate that Deputy Hedberg was unable to distinguish between legal and illegal window tinting, however. The record in fact shows that Deputy Hedberg *was* able to distinguish between legal and illegal tinting. Deputy Hedberg had been enforcing Vehicle Code violations for about nine years, and he knew the Vehicle Code allowed window tinting as long as the light transmission was 70 percent or greater. He stopped defendant's vehicle because the front passenger and driver's side windows were tinted to such a degree that he could not see in the inside of the vehicle, distinguish how many occupants there were, or even see the driver. He had "never seen any factory tinting that dark." Under the case law discussed above, this evidence was sufficient to support the trial court's ruling that there was reasonable suspicion for the stop of defendant's vehicle. (*Roberts, supra,* 184 Cal.App.4th at pp. 1190-1191; *Hanes, supra,* 60 Cal.App.4th Supp. at p. 10; *Niebauer, supra,* 214 Cal.App.3d at p. 1293, fn. 10.)

## IV. DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.